# Flaccus, Appellant, *v.* West Penn Gas Company.

*Contract—Natural gas—Pressure—Glass works.*

Where a written contract by a natural gas company to supply gas to a glass works, is silent as to the pressure required, and it appears that the gas company during a period of several years prior to the contract had furnished gas to the works at a pressure of one pound, and that this was the standard pressure at which it furnished gas to all other glass works, the company is under no obligation to furnish gas at a higher pressure.

Argued Nov. 2, 1905. Appeal, No. 178, Oct. T., 1905, by defendant, from judgment of C. P. No. 2, Allegheny Co., July T., 1898, No. 947, on verdict for defendant in case of C. L. Flaccus, trading as The C. L. Flaccus Company, v. The West Penn Gas Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, ELKIN and STEWART, JJ. Affirmed.

Assumpsit on a contract in writing. Before SHAFER, J.
The facts are stated in the opinion of the Supreme Court.
The court gave binding instructions for defendant.
Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*James Francis Burke*, with him *Thomas J. Ford*, for appellant, cited : Dixon-Woods Co. v. Glass Co., 169 Pa. 167 ; Saltsburg Gas Co. v. Saltsburg Borough, 138 Pa. 250.

*George N. Chalfant*, for appellee, cited : United Press v. N. Y. Press Co., 164 N. Y. 406 (58 N. E. Repr. 527) ; Smith v. Loag, 132 Pa. 301 ; Zoebisch v. Rauch, 133 Pa. 532 ; Fink v. Smith, 170 Pa. 124 ; Sparks v. Pittsburg Co., 159 Pa. 295.

OPINION BY MR. JUSTICE FELL, January 2, 1906 :

This action was to recover for the breach of a written agreement by the defendant to furnish natural gas to the plaintiff's glass works. The material part of the agreement is as follows : " We hereby agree to furnish natural gas at your glass works at Tarentum, Pa., for the period of one year from this date at seven cents per thousand cubic feet, provided you take at least sufficient gas to run your No. 3 furnace. . . . We will furnish a meter and regulator and make connections with your pipe at our own cost." Gas was furnished at the meter at a pressure of one pound in quantities sufficient to run the whole of the plaintiff's works, but it was found that at this pressure not enough gas would pass through the furnace pipes to heat the glass sufficiently. The defendant declined to furnish gas at a higher pressure, and the plaintiff disconnected his works from its line and obtained gas from another company at a higher pressure, at ten cents per thousand. The learned trial judge directed a verdict for the defendant for the reason that, while there was an implied obligation to furnish enough gas to run the No. 3 furnace, the plaintiff had failed to show that he was entitled to gas at a higher pressure than that at which it was furnished.

The dispute was not as to the quantity of gas but as to the pressure at which it should be furnished. The supply of gas at the meter was at all times ample, the plaintiff declined to take it unless it was furnished at a pressure which would force enough gas through the burners of the No. 3 furnace to heat it. The contract was silent as to the pressure and the plaintiff, on whom the burden of proof rested, offered no evidence from which it could be inferred that any particular pressure was intended. It was shown by the uncontradicted evidence presented by the defendant that a pressure of one pound was the standard pressure at which it furnished gas to all its customers who operated glass factories, and that during a period of several years before the contract in question was made, gas had been

furnished by it to the plaintiff at this pressure under a contract that did not require the use of a meter. There is nothing in the contract, and nothing was shown outside of it, from which it can be inferred that there was an intention to furnish gas at a pressure suited to a particular construction of furnace, or at other than the usual pressure.

The judgment is affirmed.